Brian C. Brook (No. 050442013)
Timothy R. Clinton*
Kari Parks*
CLINTON BROOK & PEED
641 Lexington Avenue, 13th Floor
New York, New York 10022
Tel.: (212) 328-9559
Fax: (212) 328-9560
brian@clintonbrook.com
    *Not admitted in New Jersey

*Attorneys for Defendants*
*Eric Inselberg and Inselberg Interactive*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRST DATA CORPORATION and FRANK BISIGNANO<br><br>           Plaintiffs,<br><br>v.<br><br>ERIC INSELBERG and INSELBERG INTERACTIVE, LLC,<br><br>           Defendants. | Civ. Action No. 2:15-cv-08301 (KM) (JBC)<br><br>ECF Case<br><br>**Motion Day: February 1, 2016** |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS FOR LACK OF JURISDICTION

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

PROCEDURAL HISTORY ................................................................................................ 3

STATEMENT OF FACTS ................................................................................................. 4

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ..................................................................................................................... 8

    I.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE ............................... 8

    A.  The Fact that Plaintiff Bisignano Undisputedly Holds Title to the Inselberg Patents Means that Defendants' Allegedly-Threatened Future Claims for Patent Infringement Do Not Arise Under the Patent Laws ............................................................... 9

    B.  First Data Lacks Standing to Sue Defendants for Non-Infringement When Its Co-Plaintiff, Bisignano, Owns the Patents and Apparently Is Not Threatening to Enforce the Patents Against First Data ..................................................................... 11

    II.  COUNT III SHOULD BE DISMISSED FOR FAILURE TO STATE A VIABLE CLAIM UNDER THE DECLARATORY JUDGMENT ACT ............................................................................. 15

CONCLUSION ................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong World Indus., Inc. by Wolfson v. Adams,* 961 F.2d 405 (3d Cir.1992) ...................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 7

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007) ............................................................. 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 7

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 ...................................................................... 12

*Clapper v. Amnesty International USA*, ––– U.S. –––, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) 7

*Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*,

    463 U.S. 1 (1983) ................................................................................................................. 2, 8

*Gotha v. United States*, 115 F.3d 176 (3d Cir. 1997) ................................................................... 7

*Gould Elecs. Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000)........................................ 6, 7, 12

*Grayzel v. Boston Sci. Corp.*, No. 12-cv-2506 (WHW), 2013 WL 1010321 (D.N.J. Mar. 13,

    2013)........................................................................................................................................ 15

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..................................... 5

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567 (Fed. Cir. 1997) ......................... passim

*Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009) ........................................... 9

*Medeva Pharma Suisse A.G. v. Par Pharm., Inc.*, 461 F. App'x 933 (Fed. Cir. 2012) ............... 12

*Medeva Pharma Suisse A.G. v. Par Pharm., Inc.*, 774 F. Supp. 2d 691 (D.N.J. 2011) .............. 12

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)......................................................... 12

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir.1997) .................................................... 7

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir.1977) ...................................... 7

*Nolen v. Lufkin Indus., Inc.*, 466 Fed. App'x 895 (Fed. Cir. 2012))............................... 5, 9, 10, 11

*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003)........................... 2, 13

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .............. 8

*Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237 (1952) ........................................ 9

*School Specialty, Inc. v. Ferrentino*, 14-cv-4507 (RBK/AMD), 2014 WL 7177324 (D.N.J. Dec. 16, 2014)................................................................................................................ 6

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)........................................... 8, 9, 11

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305 (Fed. Cir. 2010)................................................................................................................ 2, 13

*Step-Saver DataSystems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990)................. 14, 15

*Tyco Healthcare Group, LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375 (Fed. Cir. 2009)..... 13

*U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506 (3d Cir.2007) ................................. 5

**Statutes**

28 U.S.C. § 1367.................................................................................................... 16

Fed. R. Civ. P. 12(b)(1)............................................................................................ 6

Fed. R. Civ. P. 12(b)(6)............................................................................................ 7

Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202........................................ 2, 8, 12, 14

Defendants Eric Inselberg and Inselberg Interactive, LLC, by and through their undersigned counsel Clinton Brook & Peed, file this Memorandum in Support of Defendants' Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

The central dispute between the parties concerns whether Plaintiff Frank Bisignano—former CEO of the mortgage division at a national bank—engaged in abusive and illegal lending practices in violation of New Jersey's Uniform Commercial Code Article 9 in connection with a loan he made, personally, to Defendant Inselberg Interactive, LLC ("Interactive"). The loan was guaranteed by Defendant Eric Inselberg ("Inselberg"), and secured primarily by a portfolio of U.S. and international patents (the "Inselberg Patents"), for which Inselberg was the sole inventor. Bisignano managed to acquire ownership of those patents through a "contract" that, Defendants contend, violates New Jersey law and should be deemed void or rescinded, so that Defendants can retrieve the patents and be paid appropriate damages for Bisignano's predatory actions. In connection with efforts to resolve this dispute in a more-expeditious fashion than can be expected through litigation, Defendants sent Plaintiffs a draft complaint and advised that it would be filed in New Jersey Superior Court on November 30, 2015 if no progress towards resolution occurred before then.

One business day before the deadline, Plaintiffs First Data Corporation ("First Data") and Bisignano (now First Data's CEO) preemptively filed this action in this Honorable Court in an apparent attempt to forum shop through the first-to-file rule. Nevertheless, Defendants proceeded to file a state-court complaint (the "NJSC Complaint") because—as explained in Defendants' December 9, 2015 motion to dismiss, and as Plaintiffs' counsel had been advised weeks earlier—

there is clear Federal Circuit precedent saying that any argument for federal jurisdiction in this case is dead on arrival.  Although this was not a curable defect, Plaintiffs nonetheless filed a First Amended Complaint ("FAC")—after first obtaining an automatic two-week extension—which restarted the clock.  In our original brief, we argued that "[f]iling this complaint was an improper delay tactic."  Plaintiffs' response to the motion underscores that assessment.

The FAC asserts a single cause of action that Plaintiffs allege arises under federal law. That claim (previously Count II, now Count III), seeks a declaration that Plaintiff First Data has not infringed the Patents, which are currently titled to co-Plaintiff Bisignano.  This is likely the first time ever that a patent owner has filed a lawsuit seeking a declaration that someone—his co-Plaintiff—has *not* infringed his patents.  Plaintiffs believe that they are entitled to this declaration because of the immediate threat of injury presented by Defendants' desire to reacquire the Patents. Thus, they want a declaration of non-infringement *just in case* Defendants *first* succeed in obtaining title to the Patents, and *then* decide to sue for patent infringement.

It is "well-settled" that "only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit," *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010), and a patent-infringement plaintiff "must demonstrate that it held enforceable title at the *inception* of the lawsuit."  *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (emphasis added).  Thus, even explicit patent infringement claims are outside the scope of federal jurisdiction when, as here, judicial action is required to vest title in the parties alleging infringement.  *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997).  The fact that the patent infringement claim is framed as a claim under the Declaratory Judgment Act does not save the claim from dismissal. *See Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 16 (1983) (jurisdiction is lacking if a hypothetical well-pleaded claim filed in the

absence of the declaratory judgment procedural mechanism would not have arisen under federal law).  Indeed, declaratory judgment actions brought in anticipation of a claim by another require the plaintiff to overcome additional hurdles, such as whether there is sufficient immediacy of the threat to constitute an injury-in-fact or if there is an adversity of interest.

The fundamental defect in the original Complaint—the fact that the parties allegedly asserting patent infringement undisputedly do not hold title to the Inselberg Patents—remains present in the FAC and merits dismissal on multiple related grounds:  (i) the claims do not "arise under" federal law; (ii) the putative infringement plaintiffs lack standing to sue for patent infringement; (iii) the patent-infringement dispute is not ripe for judicial resolution; (iv) there is no constitutional "case or controversy"; and (v) there is no "adversity of interest" or "immediacy" under the Declaratory Judgment Act.  As explained below, the last point presents problems in terms of both jurisdiction and whether a claim is stated, and accordingly Rule 12(b)(6) is invoked only to that limited extent for the sake of completeness.

## PROCEDURAL HISTORY

Plaintiffs filed the original Complaint in this action on November 25, 2015.  Plaintiffs' counsel sent a courtesy copy of the Complaint to undersigned counsel via email on November 30, 2015.  On December 4, 2015, Defendants filed the NJSC Complaint against Plaintiffs in New Jersey Superior Court for Hudson County.  The NJSC Complaint alleges various state-law claims, including, *inter alia*, violations of the Uniform Commercial Code Article 9, conversion, and breaches of fiduciary duty and the covenant of good faith and fair dealing.  (Brook Decl. Ex. A (copy of the NJSC Complaint).)

Although there had been no attempt to actually serve the original Complaint on Defendants yet, Defendants' counsel entered an appearance quickly in order to file the previous motion to

dismiss for lack of jurisdiction.  It was set for the January 4, 2016 motion day.  Plaintiffs sought

and obtained an automatic extension pursuant to Local Rule 7.1 one business day before their

response was due.  On December 26, 2015, Plaintiffs filed an amended complaint (the "FAC").

## STATEMENT OF FACTS

On or about August 17, 2010, Plaintiff Frank Bisignano loaned $500,000 to Defendant

Inselberg Interactive, LLC ("Interactive"), which was guaranteed by Defendant Eric Inselberg, and

secured by, *inter alia*, a series of patents previously owned by the Defendants (the "Inselberg

Patents").  (FAC ¶¶ 9-15.)   On February 4, 2013, Defendants assigned the Patents' title to

Bisignano pursuant to two documents (an "Assignment Agreement" and an "Assignment")

purporting to "assign[] to Bisignano the entire right, title, and interest in and to

the Inselberg Patents."  (FAC ¶¶ 17-20 & Exs. 5-6.)  Based on these transactions, the Complaint

alleges that "[a]s of the April 2, 2012 effective date of the Assignment, *Bisignano* owned the entire

right, title and interest in and to the Inselberg Patents."  (FAC ¶ 21 (emphasis added).)

Subsequent to the Assignment, a number of disputes arose between the parties.  For

example, the Complaint alleges that the Inselberg Patents were assigned to Bisignano "in partial

payment and satisfaction of Interactive's indebtedness under the Loan Documents."  (FAC ¶ 17.)

What the Complaint omits is that this vague description is nearly a direct quote from the Loan

Documents, because the amount of the purported payment is nowhere defined.  (*See* FAC Ex. 5,

at § A(5) ("Bisignano has accepted the [Inselberg Patents] in partial satisfaction of the

indebtedness and other outstanding obligations under the Loan Documents.").)  As a result,

Bisignano has insisted that the full amount of the loan remains outstanding, meaning that, in his

view, Inselberg and Interactive received nothing in exchange for assigning the Inselberg Patents

to him.  (NJSC Compl. ¶ 96.)  Accordingly, on this point, it is Defendants' position that the

reference to "partial satisfaction" is simply too indefinite, and since that is an essential term of the contract, the Assignment Agreement should be declared void. *Id.* at ¶ 207.

On October 9, 2015, in connection with efforts to determine whether settlement was feasible, Defendants sent Bisignano and First Data a draft complaint ("First Draft Complaint"). (FAC ¶ 37; *see also* Brook Decl. Ex. B (excerpts from First Draft Complaint); Ex. C (cover letter)).[1]  In addition to eleven state-law claims, the First Draft Complaint also alleged a claim for patent infringement, which was expressly "conditioned upon the court issuing a judicial declaration or awarding injunctive relief sufficient to vest Interactive or Inselberg, or both Plaintiffs, with ownership interests sufficient to have standing to assert patent infringement claims . . . ." (Ex. B ¶ 184.)  Because the only potentially-federal claim was framed in this manner, the First Draft Complaint expressly stated that "[t]his case does not arise under federal patent law because the asserted claims of patent infringement are conditioned upon Plaintiffs' success on a state-law claim to rescind the assignment of the relevant patents." (Ex. B ¶ 3 (citing *Jim Arnold*, 109 F.3d at 1577; *Nolen v. Lufkin Indus., Inc.*, 466 Fed. App'x 895 (Fed. Cir. 2012)). "Accordingly, the exclusive federal jurisdiction over patent infringement cases under 28 U.S.C.

---

[1] Although generally "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," when there is a "document *integral to or explicitly relied* upon in the complaint," it may be considered "without converting the motion into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted) (emphasis in original). Here, the Plaintiffs "explicitly relied upon" the content of the October 9 and November 19 draft complaints in an effort to support the prerequisites for declaratory judgment. And considering that Plaintiffs seek an alternative forum for Defendants' claims against them, the actual NJSC Complaint, Ex. A, is "integral" to ascertaining the contours of the dispute in this declaratory judgment action. More importantly, materials outside the pleadings *can* be considered for purposes of ascertaining whether jurisdiction exists. *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir.2007) (where defendant makes a Rule 12(b)(1) factual challenge to jurisdiction, "it is permissible for a court to review evidence outside the pleadings."). A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." *Id*.

§ 1338 does *not* apply in this case—at least not at this time prior to the necessary declaration." *Id.* (emphasis in original).

After transmitting the First Draft Complaint, significant settlement discussions occurred and draft term sheets were exchanged.  (Brook Decl. ¶ 9.)  In connection with these discussions, First Data finally disclosed a document that Defendants had been requesting for nearly a year:  a copy of a license agreement between Bisignano and his company, First Data (the "First Data License").  *Id.* at ¶ 10.  Upon closer review of the First Data License documentation, Defendants determined that it significantly altered the nature of their claims against Bisignano and First Data, and they withdrew from settlement discussions to allow time to evaluate them fully.  *Id.* at ¶ 11.

On November 19, 2015, Defendants sent a second draft complaint to Plaintiffs ("Second Draft Complaint").  (FAC ¶ 31.)  Notably, the Complaint here does not allege that the Second Draft Complaint contained *any* claim for patent infringement, conditional or otherwise.  *See id.* Nevertheless, on November 25, 2015, Plaintiffs filed the instant Complaint primarily seeking two declaratory judgments:  First, that Bisignano owns the Inselberg Patents outright, notwithstanding his alleged violations of New Jersey law; and second, that First Data has not infringed the Inselberg Patents.

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(1) for lack of subject-matter jurisdiction.  If a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the federal court has subject matter jurisdiction.  *School Specialty, Inc. v. Ferrentino*, 14-cv-4507 (RBK/AMD), 2014 WL 7177324, at *3 (D.N.J. Dec. 16, 2014) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)); Fed. R. Civ. P. 12(b)(1).  This Court may treat Defendants' 12(b)(1) motion as either a facial or factual challenge to the court's subject-matter jurisdiction.  *Gould*, 220 F.3d at 176.  To

review a facial attack, the court may only consider the complaint and documents referenced therein and attached thereto; to review a factual attack, "the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)).   This Court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).   "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Because standing is a jurisdictional mater, motions to dismiss for want of standing also are brought pursuant to 12(b)(1).  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  To establish Article III standing, a plaintiff must allege an injury that is "concrete, particularized and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty International USA*, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013).

Defendants also move to dismiss Count III under Rule 12(b)(6) for failure to state a claim. To avoid dismissal on a Rule 12(b)(6) motion, Plaintiffs must plead "sufficient factual matter" to state a claim that is at least "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Fed. R. Civ. P. 12(b)(6)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007). While this Court must accept well-pleaded allegations as true, conclusory allegations are not entitled to the presumption of truth and need not be considered.  *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff).  Nor should the Court accept allegations contradicted by documents referenced in the complaint or integral to the allegations contained therein, or in "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering such documents does not convert the motion into a motion for summary judgment because "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").

## **ARGUMENT**

### I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE

The Complaint alleges that the court has subject matter jurisdiction "because this action involves a claim arising under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, relating to the patent laws of the United States, 35 U.S.C. § 1, *et seq*." FAC ¶ 5. At the outset, it is important to recognize that Plaintiffs' employment of the procedural mechanism of a declaratory judgment is insignificant to the jurisdictional analysis. When evaluating whether there is federal question jurisdiction over a declaratory judgment action, courts consider whether, in the absence of the declaratory judgment procedural mechanism, a well-pleaded complaint would have created federal jurisdiction. *Franchise Tax Bd. Of State of Cal. V. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 15-16 (1983) (explaining *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)), which held, *inter alia*, that "[t]he operation of the Declaratory Judgment Act is procedural only").

While cases "arising under" the patent laws confer federal subject matter jurisdiction, 28 U.S.C. § 1338(a), cases that primarily relate to construction or enforcement of a contract or license relating to a patent fall squarely within state court jurisdiction. *See Luckett v. Delpark, Inc.*, 270 U.S. 496, 510-11, 46 S.Ct. 397, 402 (1926) (a plaintiff "may not give the case a double aspect, so to speak, and make it a patent case conditioned on his securing equitable relief as to the contract").

A claim of patent infringement brought by a patent owner arises under federal law. "To invoke the jurisdiction of a federal court under § 1338, it is necessary that plaintiff allege facts that

demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised." *Jim Arnold*, 109 F.3d at 1571-72.  If the party asserting a claim of infringement "cannot in good faith allege such facts because, absent judicial intervention to change the situation, under the terms of a contract or deed of assignment the rights at issue are held by [another party], federal court is not the place to seek that initial judicial intervention." *Id.* at 1572.

> **A.    The Fact that Plaintiff Bisignano Undisputedly Holds Title to the Inselberg Patents Means that Defendants' Allegedly-Threatened Future Claims for Patent Infringement Do Not Arise Under the Patent Laws**

Count III seeks a declaration that First Data has not infringed the Inselberg Patents because "Interactive and Inselberg have [] alleged that First Data has infringed the Inselberg Patents."  FAC ¶¶ 83-84.  The Federal Circuit has already addressed this very situation, and it has repeatedly held "that a claim for patent infringement does not arise under the patent laws when it requires judicial action to vest title in the party alleging infringement."  *Nolen*, 466 Fed. App'x at 899 (citing *Jim Arnold*, 109 F.3d at 1572; *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009)).  Absent a claim that "arises under" the patent laws, there is no federal question jurisdiction; and if there is no federal question jurisdiction over a well-pleaded infringement claim, a viable federal question does not suddenly manifest simply by filing the case as a declaratory judgment action instead.  *See Skelly Oil*, 339 U.S. 671 (the Declaratory Judgment Act merely provided new federal remedies, not additional "right[s] of entrance to federal courts"); *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 248 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.").

In *Jim Arnold*, an inventor who had entered into a series of assignment agreements between 1970 and 1988 brought action in state court against various assignees of his patents, alleging state

law claims and patent infringement.  109 F.3d at 1570-71.  After defendants successfully removed the suit to and won in federal court, the Federal Circuit ultimately held that there was no federal jurisdiction because (1) the inventor's complaint did not "arise under" federal patent laws and (2) the inventor's allegation regarding the patents' assignment agreement also did not state a claim "arising under" patent laws.  *Id.* at 1578-79.  The *Jim Arnold* complaint pleaded various state law claims, including "Fraud, Misrepresentation, and Fraudulent Concealment," "Breach of Fiduciary Duties," "Breach of the Duty of Good Faith and Fair Dealing," "Tortious Interference with Contractual or Business Relations," "Civil Conspiracy," "Constructive Fraud," and "Breach of Contract."  *Id.* at 1569-70, 1573.  The Complaint also included a claim of "Patent Infringement," alleging that infringement had occurred because the assignment agreements had been null and void for at least thirteen years.  *Id.* at 1573.  The Federal Circuit held that even the explicit patent infringement claim actually was a state law ownership claim disguised as a federal patent issue: before the court could even consider the infringement claim, it first needed to resolve the ownership issues stemming from the long chain of transactions and contracts, because the inventor only could assert an infringement claim if the court first found that the inventor held title to the patents.  *Id.* at 1574.  Despite the many years of litigation up to that point, the Federal Circuit remanded the case to the district court with instructions to remand the case to state court.  *Id.* at 1577.

The Federal Circuit recently re-affirmed *Jim Arnold*, finding that there is no federal jurisdiction when complaints "expressly condition their patent infringement … claims on rescission of the Assignment Agreements."  *Nolen*, 466 Fed. App'x at 900.  The court explained the *Jim Arnold* decision as having "found that the plaintiffs' patent infringement claim did not confer federal question jurisdiction because the plaintiffs did not have ownership rights in the patent without judicial intervention."  *Id.* at 899.  Federal jurisdiction did not exist because

"Plaintiffs have failed to make any plausible allegations of ownership of the patents at issue that do not first require judicial intervention." *Id.* at 901.

Here, too, there are no "allegations of ownership of the patents at issue that do not *first* require judicial intervention." *See id.* (emphasis added). The First Draft Complaint's patent infringement claim—which was not included in the Second Draft Complaint or the filed state-court complaint—was "expressly condition[ed]," *id.* at 900, on rescission of the Assignment Agreement or some other judicial intervention to restore Interactive's title in the Patents. Ex. B ¶ 184. Accordingly, Count III of the Complaint falls squarely within the holding of *Jim Arnold Corp.* The only distinguishing feature of this case—the use of the procedural mechanism of declaratory judgment—makes no difference. *See Skelly Oil*, 339 U.S. at 671 (Declaratory Judgment Act does not provide additional bases of federal jurisdiction).

A declaration of non-infringement against someone whose ability to assert a claim for patent infringement "first require[s] judicial intervention," *Nolen*, 466 Fed. App'x at 901, obviously raises the exact same question as in *Jim Arnold* and *Nolen*—and that question is decidedly not federal.

> ### B.    First Data Lacks Standing to Sue Defendants for Non-Infringement When Its Co-Plaintiff, Bisignano, Owns the Patents and Apparently Is Not Threatening to Enforce the Patents Against First Data

In addition to failing to raise a well-pleaded federal question under the Federal Circuit's *Jim Arnold* decision, Count III of the Complaint fails to establish Article III standing and ripeness in the specific context of the Declaratory Judgment Act. Indeed, the fact that the action is framed in terms of seeking declaratory relief against claims that may not be asserted—even if Defendants do eventually obtain title to the Patents—only weakens the case for federal jurisdiction.

Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201(a).[2]  The Declaratory Judgment Act "creates a remedy only; it does not create a basis of jurisdiction[.]"  *Cutaiar v. Marshall,* 590 F.2d 523, 527 (3d Cir.1979).  The statute's express language limits this power to actions that present an "actual controversy," which "is identical to the constitutional requirement of 'cases' and 'controversies.'"  *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)).[3]  To constitute an "actual controversy" in the context of the Declaratory Judgment Act, there must be "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Golden v. Zwickler,* 394 U.S. 103, 108 (1969) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  *See also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (same requirements necessary for Article III standing and ripeness). As another judge in this District has explained:

> Of course, the touchstone of the standing analysis is that there is an actual or imminent concrete injury-in-fact traceable to the complained-of-conduct, and there must be a likelihood that the requested relief will redress the alleged injury.  In the patent context, the alleged injury is typically a restraint on the free exploitation of non-infringing goods.

*Medeva Pharma*, 774 F. Supp. 2d at 695 (internal citations and quotation marks omitted).

### 1.  "Enforceable title" is necessary to enforce patents

It is "well-settled" that "only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit."  *Spine Solutions,* 620 F.3d at 1317 (Fed. Cir.

---

[2] Notably, even in cases when jurisdiction is established, "the discretionary language of the Declaratory Judgment Act means federal courts 'have no compulsion to exercise [the] jurisdiction' the statute grants."  *Medeva Pharma. Suisse A.G. v. Par Pharmaceuticals, Inc.*, 774 F.Supp.2d 691, 694 D.N.J. 2011) *aff'd sub nom. Medeva Pharma Suisse A.G. v. Par Pharm., Inc.*, 461 F. App'x 933 (Fed. Cir. 2012) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

[3] Since the statutory requirement of an "actual controversy" is identical to the constitutional "case or controversy" requirement, motions to dismiss a cause of action under the Declaratory Judgment Act are sometimes framed under Rule 12(b)(6) for failure to state a claim, rather than Rule 12(b)(1) for lack of subject matter jurisdiction.  *See, e.g.*, *Gould*, 220 F.3d at 178-79.

2010).   To assert standing, the patent infringement plaintiff "must demonstrate that it held enforceable title at the inception of the lawsuit." *Tyco Healthcare Group, LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378 (Fed. Cir. 2009) (quoting *Paradise Creations,*, 315 F.3d at 1309)).   Accordingly, in order to plead a patent infringement claim sufficient to confer federal jurisdiction, the Complaint must include an "allegation of ownership of the patents at issue" by the person threatening to enforce the patent.   *Jim Arnold*, 109 F.3d at 1578.   With regard to Defendants' threat to sue for patent infringement, the Complaint here contains no such allegation

Contrary to what is required in order to establish that there is any actual or imminent threat of Defendants asserting patent infringement claims, the Complaint alleges "*Bisignano owns* the *entire* right, title and interest in and to the Inselberg Patents."   FAC ¶ 72 (emphasis added).   It is neither alleged nor would it be factually accurate to contend that either of Defendants has "enforceable title," *Tyco Healthcare*, 587 F.3d at 1378, to any of the Inselberg Patents at this time.[4] Plaintiffs' conclusory assertion that "Interactive and Inselberg have *alleged* that … Interactive is and has been the owner of the Inselberg Patents," FAC ¶ 69 (emphasis added), not only mischaracterizes Defendants' legal position, but also undermines any claim of a ripe and justiciable controversy.   It is an allegation about what *someone else*—Interactive—is supposedly alleging, which is not an allegation of a *fact*.   And since it is the fact of current ownership of patents

---

[4] If Interactive were claiming to already have title, it would not be *asking* for a court to award title to it.   *See* Ex. B at ¶ 123 (requesting "injunctive relief in the form of an order vesting them with sufficient joint rights and title in the Patents"); p. 39 (*ad damnum* requesting, *inter alia*, "a judgment declaring that Interactive is the rightful owner" of the Inselberg Patents).   Moreover, the facts are clear that at this time (*i.e.*, prior to any judicial intervention), title to the Inselberg Patents belongs solely to Plaintiff Frank Bisignano.   *See* FAC ¶ 72 ("Bisignano owns the entire right, title and interest in and to the Inselberg Patents;" FAC Ex. 5 (Assignment Agreement).   *See also, e.g.*, www.google.com/patents/US6434398 (showing that title was assigned to Bisignano effective February 4, 2013 for the original patent upon which the others were based).

that is necessary to confer standing, *Jim Arnold*, 109 F.3d at 1578, it is that fact which must be alleged.  Falling far short of doing so, Plaintiffs' Complaint explicitly denies that necessary fact.

In other words, the mere fact that Defendants seek to obtain ownership and enforceable title to the Inselberg Patents through judicial action does not, by itself, confer upon them the power to assert patent infringement claims even before resolving the threshold question of ownership.

> 2.  There is no "adversity of interest" between the patent owner and the alleged infringer

Given the standing requirements for a patent infringement claim, the only counterparty First Data could sue to obtain a declaration of non-infringement is the current patent owner: Bisignano.  But Bisignano and First Data are both Plaintiffs in this case.  They are on the same side.  There is no cross-claim between them.  They are even represented by the same lawyers.  It would not be surprising if this were the first time in history that a patent *holder* has filed suit for non-infringement against a co-plaintiff, represented by the same counsel.  Regardless, it is clear that the only proper parties to a patent infringement suit—the patentee and the potential infringer—agree on what the outcome should be.  Thus, there is no adversity, and no "actual controversy," which is both a constitutional and statutory requirement.  *Step-Saver DataSystems, Inc. v. Wyse Technology*, 912 F.2d 643, 648 (3d Cir. 1990); 28 U.S.C. § 2201(a).

> 3.  Plaintiffs cannot establish standing or ripeness because everything is contingent on a future event—specifically, judicial action vesting title in Defendants—that is outside Defendants' control

To be sure, although Interactive does not have standing now, there is a real possibility that Interactive will obtain standing at some point in the future if it prevails in its claims against Bisignano.  But until that happens, the question of patent infringement is not ripe for adjudication.  Nor is the potential harm sufficiently "actual or imminent" rather than "conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The patent

infringement question posed by Count III is purely hypothetical at this point in time.  In other words, unless Bisignano loses on Count I (a purely state-law question), the declaration sought in Count III would be nothing more than an advisory opinion, at best.

Although "a plaintiff need not suffer a completed harm to establish adversity of interest between the parties," "to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Armstrong World Indus., Inc. by Wolfson v. Adams,* 961 F.2d 405, 412 (3d Cir.1992) (quotation marks, citations, and alterations omitted).  "A potential harm that is 'contingent' on a future event occurring will likely not satisfy this prong of the ripeness test."  *Grayzel v. Boston Sci. Corp.*, No. 12-cv-2506 (WHW), 2013 WL 1010321, at *3 (D.N.J. Mar. 13, 2013) (citing *Step-Saver,* 912 F.2d at 647–48; *Armstrong,* 961 F.2d at 413).

Here, the potential harm of being accused of infringement is entirely contingent on a number of things happening, the most uncertain being judicial action transferring the Inselberg Patents to Interactive.  Unless that happens, there will never be any concrete and particularized injury-in-fact to First Data, nor any actual patent-infringement controversy between First Data and Defendants.  Because the Complaint fails to establish that the risk of being sued for patent infringement is "actual or imminent," Plaintiffs cannot establish their standing to seek a declaration of non-infringement.

## II.    COUNT III SHOULD BE DISMISSED FOR FAILURE TO STATE A VIABLE CLAIM UNDER THE DECLARATORY JUDGMENT ACT

The Complaint fails to state a viable claim for relief pursuant to the Declaratory Judgment Act for the same reasons that First Data cannot establish standing to sue for a declaration of non-infringement of the Inselberg Patents, stated above in Section I(B).  Even drawing all reasonable

inferences in Plaintiffs' favor, there is no "actual controversy" at this time.  Accordingly, Count III should be dismissed pursuant to Rule 12(b)(6).

If this Court dismisses Count III—the only claim where there is any issue of federal question jurisdiction—the Court should decline to assert supplemental jurisdiction over the remaining Counts I and III.  *See* 28 U.S.C. § 1367(c)(2), (3) (federal court may decline to exercise supplemental jurisdiction if state law claim "substantially predominates over the claim or claims over which it has original jurisdiction" and/or if "the district court has dismissed all claims over which it has original jurisdiction").

Notably, the decision whether to hear a declaratory judgment act claim is always discretionary, and the Third Circuit has recently approved of district courts declining to entertain such claims where they are the product of blatant forum shopping, even though the declaratory judgment action was filed first.  *See Honeywell Intern., Inc. v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America*, 502 Fed. Appx. 201, 204-06 (3d Cir. 2012).  Here, since Inselberg and Interactive do not even threaten to file an infringement claim against First Data anytime soon (nor could they), it is clear that Plaintiffs have included Count III solely as a jurisdictional hook to enable them to forum shop Inselberg and Interactive's undisputedly state-law based NJSC Complaint.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Honorable Court should dismiss Plaintiffs' First Amended

Complaint for Lack of Jurisdiction.

Respectfully submitted,

Dated: January 8, 2016

/s/ Brian C. Brook
Brian C. Brook (No. 050442013)
Timothy R. Clinton*
Kari Parks*
CLINTON BROOK & PEED
641 Lexington Avenue, 13th Floor
New York, New York 10022
Tel.: (212) 328-9559
Fax: (212) 328-9560
    *Not admitted in New Jersey

*Attorneys for Defendants,*
*Eric Inselberg and Inselberg Interactive, LLC*